UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　　　　v.<br><br>DERRICK COURTNEY FRANKLIN, II,<br><br>　　　　Defendant. | Case No. 1:15-cr-00242-BLW<br><br>MEMORANDUM DECISION AND ORDER |

## INTRODUCTION

Pending before the Court is the Government's Motion to Admit Other Acts Evidence Pursuant to Fed. R. Evid. 404(b) (Dkt. 65), Defendant Franklin's Motion to Dismiss (Dkt. 70), and the Government's Motion in Limine to Exclude Evidence of an Absence of Monetary Harm (Dkt. 71). The Court will address the motion to dismiss, and then turn to the motions in limine.

1.  **Motion to Dismiss**

Franklin argues that the Government has failed to allege the essential elements required to charge him with Counts Six through Eight of the Superseding Indictment for aggravated identify theft in violation of 18 U.S.C. § 1028A. *See Superseding Indictment*, Dkt. 17. The Government notes that Franklin is not charged in Counts Seven and Eight. Therefore, the Court will address only Count Six.

According to the Superseding Indictment, on or about August 3, 2015, Franklin and his alleged co-defendant, Jassmine Pettaway, traveled to Boise and went to various retail stores in Boise and Meridian to execute an alleged fraud scheme. *Superseding Indictment* at ¶ 2-4, Dkt. 17. Franklin and Pettaway are accused of perpetrating acts of fraud at three separate retail outlets, including a Home Depot, a Nike retail store, and a Destination XL store. *Id.* Franklin and Pettaway allegedly obtained counterfeit credit cards "embossed and encoded with unauthorized access device numbers, including credit card number and debit card numbers, without the knowledge or permission of the account holders or issuing bank or credit union." *Id.* at ¶ 7. In addition to the falsified credit and debit card numbers, the defendants also possessed a Michigan Driver's License with Pettaway's picture on it. *Id.* at ¶ 8. Both the cards and the Driver's License were inscribed with a falsified name, "J.B.". *Id.*

The Government argues that Franklin and Pettaway knowingly used the false card numbers and Driver's License to purchase goods at the retail stores which were "engaged in interstate commerce," which constitutes the basis for the alleged wire fraud claims in

Counts One through Five. *Id.* at ¶ 6. Wire fraud under 18 U.S.C. § 1343 is a felony, and the government alleges that the cards were the numbers of real persons, which may amount to Aggravated Identity Theft under 18 U.S.C. § 1028A. *Id.* at ¶ 16.

An indictment must be a "plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed.R.Crim.P. 7(c)(1). "[A]n indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs the defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *United States v. Bailey*, 444 U.S. 394, 414, (1980) (Internal quotation marks omitted). In cases where the indictment "tracks the words of the statute charging the offense," the indictment will be held sufficient "so long as the words unambiguously set forth all elements necessary to constitute the offense." *United States v. Fitzgerald*, 882 F.2d 397, 399 (9th Cir.1989) (Internal quotation marks omitted).

In ruling on a pre-trial motion to dismiss an indictment for failure to state an offense, "the district court is bound by the four corners of the indictment." *United States v. Boren*, 278 F. 3d 911, 914 (9th Cir. 2002). "[A]n indictment returned by a legally constituted and unbiased grand jury, like an information drawn by the prosecutor, if valid on its face, is enough to call for trial of the charge on its merits." *United States v. Milovanovic*, 678 F. 3d 713, 717(9th Cir. 2012) (Internal citation omitted). "The court must accept the truth of the allegations in the indictment in analyzing whether a cognizable offense has been charged." *United States v. Jensen*, 93 F. 3d 667, 669 (9th

Cir. 1996). "The indictment either states an offense or it doesn't. There is no reason to conduct an evidentiary hearing." *Boren*, 278 F. 3d at 914.

Here, the Government has sufficiently alleged the elements of Count Six under 18 U.S.C. § 1028A. In general, aggravated identity theft under 18 U.S.C. § 1028A may be charged as follows:

> Whoever, [1] during and in relation to any felony violation enumerated in subsection (c), [2] knowingly transfers, possesses, or uses, without lawful authority, [3] a means of identification of another person shall, in addition to the punishment provided for such felony, be sentenced to a term of imprisonment of 2 years.

18 U.S.C. § 1028A(a). All three elements are present for purposes of charging Franklin. Relevantly, the Superseding Indictment specifically states:

> . . .DERRICK COURTNEY FRANKLIN, II, knowingly possessed and used, without lawful authority, a means of identification of another person, to wit: the bank card numbers of real persons during and in relation to a felony violation enumerated in 18 U.S.C. § 1028A(c).

*Superseding Indictment*, at ¶ 16, Dkt. 17. Under the first element, the Government has alleged that Franklin has committed wire fraud for purposes of 18 U.S.C. § 1343. *See Superseding Indictment*, at ¶ 5–13, Dkt. 17. Wire fraud is codified under Chapter 63, which is specifically contemplated as an applicable felony for purposes of aggravated identify theft. *See* 18 U.S.C. § 1028A(c)(5) ("any provision contained in Chapter 63 (relating to mail, bank, and wire fraud)"). Therefore, the Superseding Indictment has properly stated the first element required under Count Six.

Franklin's primary challenge to the Government's Superseding Indictment is whether it has sufficiently stated the second and third elements, stating that the *mens rea*

for the crime requires the defendant "knowingly transfers, possesses, or uses, without lawful authority. . ." the identification of a *real* person. *See* 18 U.S.C. § 1028A(a). Franklin urges the Court to scrutinize the grand jury transcript, which Franklin suggests ambiguously uses the word "they" to describe both Franklin and Pettaway's activity, when it is possible only Pettaway possessed knowledge that the card numbers used belonged to "another" person. *See Motion to Dismiss*, at 6, Dkt. 70. However, the language precisely tracks the language of the statute and therefore sets forth "all elements necessary to constitute the offense." *Fitzgerald*, 882 F.2d at 399. An indictment is intended to "give the defendant notice of the charge so that he may defend or plead his case adequately." *United States v. James*, 980 F. 2d 1314, 1316 (9th Cir. 1992). It is not a reflection of the strength of the Government's case, nor may it be used to "assess the quality of the evidence presented to the grand jury." *Jensen*, 93 F. 3d at 669. It is certainly not intended to "be used as a device for a summary trial of the evidence." *Id.* It would be improper for the Court to inquire further than the "four corners" of the Superseding Indictment. *See Boren*, 278 F. 3d at 914. There can be no doubt Franklin was on notice that he was included in the term "they" and therefore had notice of the charge against him. Thus, the Superseding Indictment provides sufficient notice of the crimes which Franklin has been charged. Accordingly, the Court will deny the motion to dismiss.

**MEMORANDUM DECISION AND ORDER - 5**

**2.     Rule 404(b) Evidence**

According to the Government, the wire fraud and aggravated identity theft counts in the Superseding Indictment relate to transactions Franklin made or aided and abetted his co-defendant in making at Home Depot, Nike, and Destination XL during a trip to Idaho on August 3-4, 2015. The Government contends that the evidence will show that on those dates, Franklin and his co-defendant visited other stores, including Shopko, Old Navy, Fred Meyer, Toys R Us, Albertsons, Walmart, Famous Footwear, and Bath and Body Works. According to the Government, some transactions at these stores were successful and some were not, but the defendants' visits to those stores helped initiate the investigation. For example, a loss prevention officer at Shopko contacted local law enforcement to inform them about a suspected attempt to make a fraudulent purchase. While at Shopko, Franklin and his co-defendant swiped multiple cards in an attempt to purchase gift cards, but the cards were declined. Additionally, law enforcement was provided photographs taken from security video at Old Navy which helped them identify Franklin and his co-defendant. Law enforcement eventually confirmed that the credit card number used by the defendants at Old Navy was fraudulent on August 4, 2015. These actions brought the crimes to the attention of law enforcement and aided them in confirming that the purchases were fraudulent.

According to the Government, when the defendants were arrested at the Boise Airport, several counterfeit credit cards were found in a storm drain. Witnesses saw Franklin crouching near the storm drain and dropping the cards down the grate. There

was a Visa debit card with a number ending in 6389 found on the defendant which was torn in half. There were additional American Express counterfeit credit cards found in a wallet in the cab that appeared to belong to the co-defendant. All of these cards were recovered by law enforcement. Some of the recovered cards matched the card numbers charged in the Superseding Indictment. Also, a number of Nike, American Express, MasterCard, Old Navy, Destination XL, Pier 1 Imports, Shell, and T.G.I. Friday's gift cards were recovered from Franklin, his co-defendant, and their property when they were arrested by law enforcement.

      The Government gave notice (Dkt. 62) that it intends to offer this evidence because it is inextricably intertwined with the charged offenses. Even if it is not inextricably intertwined, the Government suggests it is admissible under Rule 404(b). In a subsequent motion (Dkt. 65), the Government asked the Court to admit evidence about a prior trip Franklin and his co-defendant took to Colorado to commit a similar scheme as the one alleged in the Superseding Indictment. The Government concedes that evidence of this prior trip is not inextricably intertwined with the crimes alleged in this case, but asks the Court to admit the evidence under Rule 404(b).

      Although it is not clear whether the Government is asking the Court for a ruling on the first set of evidence listed in the notice, the Court agrees with the Government's suggestion that the evidence is inextricably intertwined with the charged offenses. Evidence that is inextricably intertwined with a charged offense is considered direct evidence, and is admissible regardless of whether it meets the Rule 404(b) test. *U.S. v.*

*Beckman*, 298 F.3d 788, 794 (9th Cir. 2002). Evidence is inextricably intertwined when particular acts of the defendant are part of a single criminal transaction, or when other act evidence needs to be admitted in order to permit the prosecutor to offer a coherent and comprehensible story regarding the commission of the crime. *Id*. (Internal citation omitted).

Here, the charged victims' cards and other victims' cards were used at several stores. Law enforcement recovered the cards that make up the charged conduct, as well as cards that are not part of the charges, at the same time and pursuant to the same investigation. Moreover, evidence of the charged crimes was gathered because of alleged attempts to use the cards which are not part of the charged conduct. The proffered evidence is direct evidence of the wire fraud scheme and aggravated identity theft charges. The evidence establishes the existence of a scheme or plan to defraud, which the government must prove in support of the wire fraud charges. It also establishes the scope and background for the charged crimes. And, as just noted, it all took place over two consecutive days in conjunction with the crimes charged in the Superseding Indictment. Based upon the Government's proffer and the evidence before the Court at this point, the Court agrees that the evidence is needed for the prosecutor to offer a coherent story regarding the commission of the crimes.

Additionally, the evidence is admissible under Rule 404(b). Evidence of prior bad acts is not admissible to show that the defendant has a bad character and is prone to criminal activity, but may be introduced to show motive, opportunity, intent, preparation,

plan, knowledge, identity, or absence of mistake or accident. Fed. R. Evid. 404(b). As such, the Ninth Circuit has held that Rule 404(b) is an inclusionary rule under which evidence is admissible for one of the purposes stated in the rule, unless it tends to prove only criminal disposition. *United States v. Meling*, 47 F.3d 1546, 1557 (9th Cir. 1995).

To prove that the evidence is offered for one of these reasons, the Government must show that the evidence: (1) is offered to prove a material element of the current offense; (2) if admitted to prove intent, is similar to the offense charged; (3) is based on sufficient evidence; and (4) is not too remote in time. *United States v. Ramirez–Robles*, 386 F.3d 1234, 1242 (9th Cir.2004). The Government must also show that the evidence satisfies Federal Rule of Evidence 403 such that its probative value is not outweighed by its prejudicial effect. *Id*.

Here, the evidence relates to events occurring over a two-day period.  The government intends to offer testimony from witnesses with direct knowledge. The evidence presented is virtually identical to the charged conduct.  Finally, it tends to prove issues clearly material to this case – the defendant's knowledge, intent, modus operandi, pattern of behavior and the absence of any mistake.  Moreover, the evidence has probative value that is not outweighed by any prejudice. There is clear probative value in providing the jury with evidence that Franklin's intent was to use all of these cards fraudulently.  To the degree there is any prejudice, it can be rectified by a limiting instruction.

The Court also concludes that evidence of the Colorado trip is admissible under Rule 404(b). The only difference between the Idaho evidence and the Colorado trip, is that the latter took place several months before the charged conduct. The Court concludes that a two or three month gap is not sufficient to make the evidence inadmissible. *See United States v. Vo,* 413 F.3d 1010, 1018–19 (9th Cir. 2005)(evidence of drug conviction more than ten years earlier not too remote in time to be admissible under Rule 404(b)); *United States v. Rude,* 88 F.3d 1538, 1550 (9th Cir.1996) (eight-year-old prior act admissible); *United States v. Hadley,* 918 F.2d 848 (9th Cir. 1990)(sexual molestation committed by defendant ten years earlier not too remote in time under Rule 404(b) where pattern was very similar to charged conduct);*United States v. Mehrmanesh,* 689 F.2d 822, 831 (9th Cir. 1982) (prior drug delivery from five years earlier was probative to current drug charges, especially as to the issues of knowledge and intent).

Accordingly, the Court will rule *in limine* to allow the evidence discussed in the the notice, including the events which occurred during the 2-day period surrounding the charged crimes, and the Colorado trip which occurred several months earlier.

3.   **Absence of Monetary Harm**

The Government asks the Court to exclude evidence and argument that Franklin's acts did not result in monetary or financial harm. The Court does not see the relevance of monetary or financial harm to the charges, and Franklin did not object or otherwise respond to the motion. Accordingly, the Court will grant the motion.

## ORDER

**IT IS ORDERED:**

1. Defendant's Motion to Dismiss (Dkt. 70) is **DENIED**.

2. Government's Motion to Admit Other Acts Evidence Pursuant to Fed. R. Evid. 404(b) (Dkt. 65) is **GRANTED.**

3. Government's Motion in Limine to Exclude Evidence of an Absence of Monetary Harm (Dkt. 71) is **GRANTED**.

DATED: July 27, 2016

B. Lynn Winmill
Chief Judge
United States District Court